UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:22-cr-181-TPB-AAS

MARQUIS DYSHAWN PLAYER,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant's "Motion to Suppress and Incorporated Memorandum of Law," filed by counsel on December 10, 2023. (Doc. 65). On January 9, 2024, the United States of America filed a response in opposition to the motion. (Doc. 72). After several continuances, including some requested by the defense (Docs. 75; 80), the Court held a bifurcated suppression hearing on February 29, 2024, and September 19, 2024. (Docs. 89; 117). After reviewing the motion, response, testimony, evidence, legal arguments, court file, and the record, the Court finds as follows:

**Background**

This case arises from a February 8, 2022, traffic stop. After Defendant Marquis Player exited a convenience store in North Tampa at around 11:30 p.m., he was followed by Tampa Police Department Officers Miguel Blasini and Craig Douglas in an unmarked police vehicle. Police officers assert that Defendant did not stop at a stop sign at the intersection of E Bird Street and N 10th Street. Defendant claims that he did in fact stop before entering the intersection.

Other law enforcement officers responded to the scene. During the traffic stop, Officer Blasini approached the driver's door and requested Defendant's license and registration. According to Officer Blasini, while doing so, Officer Blasini looked down at the door and observed a firearm protruding from the map pocket of the driver's side door in plain view. Officer Blasini told Defendant not to move while the officers removed Defendant from the vehicle and secured the firearm – a pink and silver SCCY 9mm pistol, loaded with five rounds of ammunition that had been reported as stolen earlier that year.

Law enforcement officers ran a background check and confirmed that Defendant was a prior convicted felon. Subsequently, during an inventory search, officers discovered crack cocaine (52 grams), fentanyl (15.8 grams), cannabis, and a digital scale. A search of Defendant also produced $2,214.00 in cash. After receiving *Miranda* warnings, Defendant admitted to being a convicted felon and having served prison time for drug charges. He also admitted to possessing the firearm for personal protection, claiming that he bought the firearm the day before for $100.00 from a "baser" on the street.

In his motion, Defendant challenges the legality of the traffic stop. Defendant argues that because the vehicle came to a complete stop at the stop sign, there was no probable cause or reasonable suspicion for the officers to believe that he had committed a crime.[1] He also contends that the plain view doctrine would be

---

[1] Defendant also appears to argue that the stop was pretextual because law enforcement officers followed him as soon as he left the convenience store. Even if so, the United States Supreme Court has held that the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers involved. *Whren v. United*

inapplicable because the criminal nature of the firearm was not apparent since the officers did not know about his status as a felon at the time of the discovery of the firearm. Defendant requests that the Court suppress all evidence derived from the search, including any firearms found in the vehicle and any statements he made during the encounter with law enforcement.

## Legal Standard

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "[A] decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred . . . and an officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 690, 699 (1996)).

## Analysis

Upon review, the Court finds that the initial stop was lawful because Officers Blasini and Douglas had probable cause, or at least reasonable suspicion, to believe that Defendant committed a traffic infraction. Florida law requires that a vehicle

---

*States*, 517 U.S. 806, 813 (1996). By doing so, the Supreme Court has conclusively rejected the notion that ulterior motives or pretexts may invalidate police conduct that is justified based on probable cause. *Id.* at 811-12. The Court therefore does not further address this argument.

"approaching a stop intersection indicated by a stop sign […] stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection." *See* § 316.123, *F.S.* The Court finds the testimony of Officers Blasini and Douglas to be credible, including their testimony that they observed the vehicle tap its brakes but fail to completely stop at the stop sign.[2] No contrary physical evidence was produced at the hearing, and neither Defendant nor anyone else testified to the contrary.

If a law enforcement officer "has probable cause to believe a violation of law has occurred, it is reasonable for him to make a traffic stop." *United States v. Smith*, No. 2:06-cr-42-FtM-29SPC, 2006 WL 2226313, at *2 (M.D. Fla. Aug. 3, 2006) (Steele, J.) (quoting *United States v. Weaver*, 145 F. App'x 639, 641 (11th Cir. 2005)); *see also* § 901.151, *F.S.* (officer may detain person when officer reasonably believes person has committed, is committing, or is about to commit a crime). Because the vehicle did not stop at the stop sign, Officers Blasini and Douglas had probable cause, or at least reasonable suspicion, to believe that the driver of the vehicle committed a traffic infraction. Therefore, the officers had a lawful basis to initiate a traffic stop and at least temporarily detain Defendant as the driver.

---

[2] The Court acknowledges, but does not find persuasive, Defendant's argument that Officer Blasini is not a credible witness as evidenced by an internal investigation into his conduct in another case in which he is alleged to have "illegally" gone through a suspect's mailbox. Based on his testimony and demeanor at the hearing, the Court finds Officer Blasini credible. Officer Douglas testified consistently with Officer Blasini's testimony. The Court notes that Defendant did not introduce any witnesses or testimony to contradict the officers' version of events.

Because the traffic stop was legally permissible, the Court next considers application of the plain view doctrine. The plain view doctrine permits a warrantless seizure "where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014) (quotations omitted). "After a traffic stop has occurred, an officer may seize any contraband, including weapons, in plain view." *See United States v. Mackey*, 149 F. App'x 874, 880 (11th Cir. 2005) (citing *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001)).

Officer Blasini testified that during the legal traffic stop, he observed a firearm in the side of the car door in a compartment that was open to view. Photographs of the firearm in the door compartment were admitted at the hearing. The Court finds this testimony credible.

It appears undisputed that at the time of the discovery of the firearm, law enforcement officers did not know that Defendant was a convicted felon. Therefore, the officers did not have probable cause, at that time, to arrest Defendant for the crime of felon in possession of a firearm. They were, however, entitled to order him out of the vehicle without violating the Fourth Amendment. *See Maryland v. Wilson*, 519 U.S. 408, 410 (1997) ("[A] police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle."); *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977) (holding that when motor vehicle is lawfully detained

for traffic violation, a police officer may order the driver to get out of the vehicle); *State v. Creller*, 386 So. 3d 487, 489 (Fla. 2024) ("It is well-settled that once a driver has been lawfully stopped for a traffic violation, police officers may order the driver out of the vehicle for officer safety reasons without violating the Fourth Amendment's prohibition of unreasonable searches and seizures."); *State v. Benjamin*, 229 So. 3d 442, 444 (Fla. 5th DCA 2017) (holding that because the defendant was lawfully detained, the police officer could properly order the defendant to exit his vehicle even without a particularized basis to believe that the defendant was a threat to the officer's safety). In addition, officers may seize and secure even lawfully possessed firearms for officer safety reasons during traffic stops. *See United States v. Newsome*, 475 F.3d 1221, 1226 (11th Cir. 2007) (warrantless seizure of gun objectively reasonable under Fourth Amendment when there is real concern for safety of officer present or public at large).

Moreover, Florida Statute § 790.25(4)(a) provides that a person in lawful possession of a firearm may possess the firearm inside a vehicle only if the firearm is "securely encased or otherwise not readily accessible for immediate use." From its position in the side of the driver's side door, the firearm was not encased and was readily accessible for immediate use, providing a threat to police officers on the scene. It was a crime for Defendant to possess a firearm that was not securely encased or otherwise readily accessible for immediate use, and the criminal nature of an unsecured and accessible firearm was readily apparent to the officers. As such, Defendant was subject to arrest at that point for violation of Florida Statute §

790.25(4)(a) even if officers had not yet discovered the fact that he was a convicted felon.

Finally, even if application of the plain view doctrine was inappropriate because it was not immediately apparent that Defendant was a convicted felon, seizure of the firearm would have been inevitable.  During the traffic stop, law enforcement officers conducted a computerized background check that revealed that Defendant was a convicted felon.  Consequently, even if the officers did not know of Defendant's status at the exact moment in time they actually located and seized the firearm, they certainly would have learned and did in fact learn of his status during the reasonable duration of the traffic stop.  This ordinary and routine investigation would have inevitably led to the seizure of the firearm.

For these reasons, the motion to suppress is denied.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this <u>1st</u> day of October, 2024.

                                                            _____
                                                            TOM BARBER
                                                            UNITED STATES DISTRICT JUDGE